IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| MARSHA M. HARRAH<br>9418 McCraken<br>Garfield Heights, Ohio 44125<br><br>   Plaintiff,<br><br>vs.<br><br>DSW, INC.<br>C/O CSC-LAWYERS INCORPORATING SERVICE<br>50 West Broad Street, Suite 1800<br>Columbus, Ohio 43215<br><br>   Defendant. | )<br>) CASE NO.<br>)<br>) JUDGE<br>)<br>)<br>)<br>)<br>) <u>Jury Demand Endorsed Hereon)</u><br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**NATURE OF ACTION**

1. This is a civil action for declaratory judgment, and damages for age discrimination based on the Age Discrimination in Employment Act, Title 29 U.S.C. § 621 et seq. ("ADEA") and for retaliation for having engaged in protected activity and the retaliatory termination of employment under Title VII of the Civil Rights of 1964 as amended, 42 U.S.C. § 2000 et seq., 42 U.S.C. § 2000e-2(c), and 2000e-5(k), the Civil Rights Act of 1991, as amended and §§ 1981, as amended, and 1981 (a) and (b) ("Title VII") and R.C. § 4112.01 et seq. and the wrongful termination of employment, to correct unlawful employment practices and to provide lost wages and other relief including back-pay, front-pay, compensatory damages and lost fringe benefits and any other relief to which this Court determines Plaintiff is entitled, according to law. Declaratory relief is sought pursuant to Title 28 U.S.C. §§ 2201 and 2202.

**JURISDICTION AND VENUE**

2. Plaintiff, Marsha M. Harrah ("Plaintiff or Harrah") has complied with all conditions precedent to the filing of this civil action. To wit:

    a. On March 16, 2010, Plaintiff filed a timely charge alleging age discrimination and retaliation pursuant to Title VII with the United States Equal Employment Opportunity Commission. Such

       Charge was filed within 300 days after the unlawful employment practices occurred. On or about January 31, 2011, the EEOC issued to Plaintiff a *Notice of Suit Rights* with respect to the Charge. (The *Notice of Suit Rights* is attached hereto as Exhibit A); and

    b. Pursuant to 29 U.S.C. § 626 (d), more than 60 days have elapsed since the filing of the charge.

3. This Court, pursuant to 28 U.S.C. § 1331, has federal question subject matter jurisdiction over the primary claims in this case, which are brought pursuant to the ADEA (29 U.S.C. 626 (c), Title VII (42 U.S.C. § 2000 et seq.). The Court has supplement jurisdiction over Plaintiff's state law statutory and common law claims by virtue of Title 28 U.S.C. § 1367.

4. Venue is proper in the Eastern Division of the Northern District of Ohio as the acts and omissions alleged herein took place in the City of Warrensville Heights, in Cuyahoga County, Ohio.

## PARTIES

### A. Plaintiff

5. Harrah is a former employee of Defendant, DSW, Inc. whose date of birth is ▮▮▮▮▮▮▮ 1962 and was over the age of 40, on February 23, 2010, therefore was a member of a protected class entitled to the protections of the ADEA and the Ohio Revised Code. Harrah commenced her employment for Defendant as a Store Manager on June 27, 2005. Harrah had been continuously employed by Defendant in the position of Store Manager of the Warrensville Store until February 23, 2010, when District Manager Tim Harpe terminated her employment for the alleged violation of Defendant's loss prevention policy.

6. Harrah as a person who had engaged in protected activity regarding discrimination under the ADEA is entitled to protection from retaliation in employment under Title VII and the Ohio Revised Code.

### B. Defendant DSW, Inc.

7. Defendant, DSW, Inc. ("Defendant") is a Corporation For Profit, in corporate under the laws of the State of Ohio, with its principal office located in the City of Columbus, Franklin County, Ohio and licensed to do

business in the State of Ohio and doing business in the City of Warrensville, Cuyahoga County, State of Ohio, and has engaged in an industry affecting commerce, and has had more than fifteen employees for each working day in each of the twenty (20) or more calendar weeks in the current or preceding calendar year, within the meaning of Title VII, and as a result is also an employer within the meaning of ADEA and R.C. § 4112.01 et seq.

## STATEMENT OF FACTS

Plaintiff's Employment History

8. Harrah commenced her employment for Defendant on June 27, 2005, as the Store Manager of the Lyndhurst Store on June 27, 2005. Harrah had been continuously employed by Defendant in the position of Store Manager of the Warrensville Store until February 23, 2010, when District Manager Tim Harpe ("District Manager Harpe") terminated her employment for the alleged violation of Defendant's loss prevention policy.

9. Lori Christensen was Defendant's Regional Manager ("Regional Manager Christensen") over both the Lyndhurst Store and the Warrensville Store for the entire period of Harrah's employment with Defendant. Regional Manager Christensen was the immediate supervisor of each of the District Managers to whom Harrah reported during her employment with Defendant.

10. On information and belief Chris Hill has been Defendant's Human Resources Director for its Ohio stores since at least April 2008.

11. Harrah was supervised by District Manager Mary Clough ("District Manager Clough") during the period June 27, 2005, through July 2007. Harrah was then supervised by District Manager Steve Soranno ("District Manager Soranno during the period August 2007, through August 2009. District Manager Harpe was Harrah's immediate supervision from September 2009, through February 2010.[1]

12. At all relevant times herein, Regional Manager Christensen and District Managers Clough, Soranno and Harpe were employed by Defendant and were all acting within the course and scope of their employment

---

[1] During the relevant period, herein, both Defendant's Lyndhurst and Warrensville stores were in Defendant's Pittsburgh and/or Midwest Region. For the relevant period, herein, Christensen was the Regional Manager of both the Pittsburgh and the Midwest Region.

and/or agency on behalf of Defendant, and as a result Defendant is liable for all said conduct and/or omissions under the doctrine of Respondeat Superior.

13. During the period that Harrah was employed as the Store Manager of the Lyndhurst Store she was under the supervision of District Manager Mary Clough ("District Manager Clough").

14. On April 20, 2006, Harrah without having received any prior counseling was given a correctional warning for operational procedures.

15. On July 6, 2007, District Manager Clough told Harrah that she was not able to perform my job responsibilities as Store Manager and that I should accept a demotion to Assistant Manager of the Great Northern because I was adopting a child and starting a family.

16. On July 9, 2007, Harrah telephoned Defendant's "safe-2-call" and reported District Manager Clough's the discriminatory familial statements. Harrah also faxed her notes regarding the conversation to "safe-2-call." [2]

17. On July 11, 2007, Harrah drove to Pittsburgh, Pennsylvania and met with Regional Manager Christensen, District Manager Clough and the new District Manager Soranno to address the discriminatory familial statements made by District Manager Clough which she denied. District Manager Clough left the company shortly after this meeting.

18. On October 29, 2007, Regional Manager Christensen and District Manager Soranno came to the Warrensville store on Harrah's day off and had a meeting with Harrah's staff about Harrah.

19. On October 30, 2007, District Manager Soranno returned to the Warrensville store and met with Harrah and her Assistant Managers. During the meeting Soranno undermined Harrah's authority by subjecting her to repeated and unwarranted criticism in front of her Assistant Managers.

20. On December 13, 2007, District Manager Soranno met with Harrah at the Warrensville store and told her that DSW store managers should be between range in age from their mid 20's to their early 30's and not someone with 10-15 years of past management experience.

---

[2] Defendant's employees can ostensibly telephone "safe-2-call" and report employment related issues without fear of retaliation.

4

21. During the December 13, 2007, meeting District Manager Soranno also told Harrah that she was not fashionable and that she did not fit the image of what Defendant was looking for in a Store Manager.

22. During December 2007, Sue Rock, Elizabeth Dalego and Chris Wrinkler were Store Managers, in the protected age group over the age of 40 employed by Defendant who also reported to Regional Manager Christensen and District Manager Soranno.[3]

23. During December 2007, District Manager Soranno told *Waterfront* Store Manager Sue Rock that he had been hired to get rid of her which from the context of their conversation she interpreted to mean get rid of her because of her age, over the age of 40.

24. During December 2007, District Manager Soranno told *Waterfront* Store Manager Sue Rock that she did not fit the DSW brand image.

25. During December 2007, District Manager Soranno told *Waterfront* Store Manager Sue Rock to replace older Defendant Sales Associates because they did not fit the DSW image.

26. During December 2007, District Manager Soranno made statements to *Great Northern* Store Manger Elizabeth Dalego that her older Sales Associates did not fit the "new DSW" image.

27. That James Baine ("Baine") was the *Four Points* Store Manager under the supervision of Regional Manager Christensen and District Manager Soranno, during the period July 2007 through 2008 when he resigned his employment with Defendant.

28. That during the period July 2007 through 2008, District Manager Soranno was constantly reminding Baine that he ("Soranno") was not happy that several members of the *Four Points* Store's full time staff were age (40) and older.

29. That Baine resigned from his position as the *Four Points* Store Manager because he could not tolerate being constantly reminded by District Manager Soranno that he was not happy that several members of the *Four Points* Store's full time staff were age (40) and older.

---

[3] The Waterfront, Great Northern, and Four Points Stores were in the Pittsburgh/Midwest Region under the supervision of Regional Manager Christensen.

30. In April 2008 District Manager Soranno gave Harrah a *Below Expect*ations Review for the year 2007, although he had only been her District Manager since August 2008 and in the meeting during which the Review was discussed he implied that Harrah was having a relationship with *Great Northern* Store Manager Elizabeth Delago ("Delago").

31. In April 2008 District Manager Soranno gave Harrah a *Below Expectations* Review for the year 2007, although Defendant's personnel policies and procedures stated that DSW employees were not to receive a *Below Expectations Review* unless the employee had received a corrective during the year under review; and Harrah had not received a corrective during the year 2007.

32. In April 2008 District Manager Soranno gave Harrah a *Below Expectations* Review for the year 2007, even through her sales statistics were consistent with the other stores in the district.

33. On or about April 10, 2008, Harrah telephoned Chris Hill ("Hill") of Defendant's Human Resources Department and complained to him about the *Below Expectations* Review and the accusation about the relationship with Delago.

34. During the April 10, 2008, telephone conversation with Hill Harrah reported District Manager Soranno's statements of December 15, 2007, that she was too old to be a Store Manager for Defendant, that she was not fashionable and that she did not fit the image that Defendant was looking for in a store manager.

35. During the April 10, 2008, telephone call with Hill Harrah told him that she believed that District Manager Soranno's statements of December 15, 2007, constituted age discrimination regarding her employment.

36. During the April 10, 2008, telephone call with Hill Harrah told him the *Below Expectation* Review given to her by District Manager Soranno was the result of age discrimination against her by him (Soranno).

37. On April 18, 2008, a conference call was held between Harrah, Regional Manager Christensen, District Manager Soranno and Hill to discuss District Manager Soranno's statements to Harrah regarding Defendant's preference for its Store Managers to be between the ages of their mid 20s to early 30s, and the fact that Harrah did not fit the DSW image for its Store Managers and her *Below Expectation* Review.

38. During the April 18, 2008, conference call District Manager Soranno stated that his statements regarding Defendant's preference that its Store managers be a certain age and that Harrah did not fit the DSW image were misunderstood.

39. During the April 18, 2008, conference call District Manager Soranno stated that the *Below Expectations* Review he gave Harrah was not for the entire year 2007, but was only for the last three (3) months of the year although Harrah pointed out that she was off work for six (6) weeks of the three (3) months that the review was based on.

40. During the April 18, 2008, conference call Regional Manager Christensen stated that she would do a six (6) month performance review that covered the period February 2008 through July 2008, which would replace the *Below Expectations* Review given to her by District Manager Soranno.

41. In August 2008, Harrah received a *Meets Expectations* Review and an increase in pay. However, the *Below Expectations* Review was never changed in her *Performance Profile*.

42. In February 2009, Harrah telephoned Hill to inquire why the *Below Expectations* Review had not been replaced with the *Meets Expectations* Review in her *Performance Profile* as promised by Regional Manager Christensen and Hill said he would look into it but he never gave her an answer.

43. On March 10, 2009, District Manager Soranno issued a *Corrective Warning* to Harrah because she exited the back door/emergency door of the store to smoke a cigarette. The *Corrective Warning* was issued in violation of Defendant's personnel policies and procedures because she had never received a counseling on the issue.

44. In April 2009 District Manager Soranno gave Harrah a *Meets Expectations* Review that he stated would have been an *Exceeds Expectations* Review if her stores fourth quarter sales statistics had not fallen below projections. However, Harrah's *Warrensville Store* was one (1) of only four (4) stores that actually exceeded Last Year sales in the Pittsburgh Region and company as a whole for the year 2008.

45. On August 20, 2009, District Manager Soranno issued a *Counseling Corrective* to Harrah for alleged cleanliness issues in the *Warrensville Store* and shrink control (theft of merchandise) although the

*Warrensville Store* was not equipped with an adequate security system and although she had repeatedly requested help with the shrink control issue only to have her requests ignored by Soranno.

46. In September 2009, District Manager Soranno was reassigned to another district and Defendant's stores in the Cleveland Metropolitan Area became part of the Columbus District and Tim Harpe became Harrah's District Manager.

47. On October 3, 2009, District Manager Harpe issued a *Counseling Corrective* to Harrah for alleged job performance related to the shrink control about which she had repeatedly requested help and had those requests ignored.

48. During the entire month of October 2009, through November 5, 2009, District Manager Harpe was in Harrah's *Warrensville Store* every week, (2) to four (4) days each week.

49. On November 5, 2009, District Manager Harpe issued a *Final Warning* to Harrah for alleged job performance issues that were not true and/or not directed.

50. On November 5, 2009, during the conversation regarding the *Final Warning* District Manager Harpe told Harrah that she would be terminated in thirty (30) days and wouldn't she just rather quit than be fired. Harrah told Harpe that she would not quit and District Manager Harpe stated that he would mirror her schedule and be in her store every day and stated further that she was pushing him.

51. After the conversation with District Manager Harpe regarding the *Final Warning* Harrah had an anxiety attack and chest pains and went directly to the emergency room (hospital). Harrah went on FMLA leave and did not return to work until February 2, 2011.

52. On November 20, 2009, although Harrah was paid by direct deposit to her checking account and had completed the required forms for FMLA and was on short term disability (salary continuance) she did not receive her pay.

53. Defendant's Benefits department representative told Harrah that she (Harrah) had missed a deadline for submitting the FMLA request and that she would have to wait until the next pay period. Harrah told the representative that she had not missed any deadline and that she would consult an attorney; Harrah

received a call, a half hour later, from the representative stating that a check would be sent to her by overnight mail.

54. Harrah returned to work on February 2, 2010, after a meeting with District Manager Harpe. During the meeting Harpe told her that the *Warrensville Store* was in better shape than when she left.

55. Harrah returned to the *Warrensville Store* at 12:30 p.m. and saw that District Manager Harpe's representations that the store was in better shape were false.

56. Harrah learned that during the entire period she was on FMLA from November 5, 2009 until she returned, on February 2, 2010, Michelle Wyat ("Wyat"), who was less than 40 years of age and who was not in the protected class held the position of Store manager.

57. On February 2, 2010, upon her return to work Harrah learned that Wyat who was not in the protected class and who had not engaged in protected activity was not required to meet the same performance standards as had been expected of her, for example: (1) Harrah was required to hold weekly in person management meetings and Wyat was not; (2) Harrah was held accountable for cross-training the *Warrensville Store* staff and Wyat was not; (3) District Manager Harpe did not provide Harrah with the assistance of other store managers and associates from other stores to get freight out but provided the assistance to Wyat; and Harrah was held responsible for diversifying the *Warrensville Store* staff and Wyat was not made responsible for diversifying the staff.

58. On February 23, 2010, District Manager Harpe terminated Harrah's employment for allegedly violating Defendant's *Loss Prevention* policy (No Apprehension) of not following customers suspected of theft out into the parking lot. Harrah did not violate the policy because she did not follow any customer suspected of theft out of the store.

59. Harrah did not violate Defendant's *Loss Prevention* policy (No Apprehension) by having a Sales Associate follow a customer suspected of theft out of the store because the customers suspected of theft remained in the store when the Sales Associate follow Defendant's accepted practice of sitting in a vehicle and trying to get a license plate.

60. Harrah told District Manager Harpe that Wyat had violated Defendant's *Loss Prevention* policy (No Apprehension) twice during her FMLA by actually running out of the store into the parking lot after customers suspected of theft; Harpe told Harrah that he was talking about her not Wyat.

61. Despite having actually having violated Defendant's *Loss Prevention* policy (No Apprehension) for which Harrah was terminated Wyat remains employed by Defendant and was promoted to Store Manager of the *Warrensville Store*.

62. In December 2007, Defendant had nine (9) stores in the Pittsburgh/Midwest Region which included the Cleveland Metropolitan Area, of those nine (9) stores eight (8) of the Store Managers were over 40 years of age and in the protected class. However, at present, only two (2) of the Store Managers in the Pittsburgh/Midwest Region are over 40 years of age and in the protected class.

## COUNT ONE

## Age-ADEA and Age R.C. § 4112.01

63. Plaintiff incorporates by reference each and every allegation, averment and statement set forth, herein above, in paragraphs nos. one (1) through sixty-two (62), as if fully restated, herein below, and states further as follows.

64. Plaintiff is a former employee of Defendant, DSW, Inc. whose date of birth is ▮▮▮▮▮▮▮ 1962 and was over the age of 40, on December 13, 2007, and therefore was a member of a protected class entitled to the protections of the ADEA.

65. On December 13, 2007, District Manager Soranno met with Plaintiff at the Warrensville store and told her that DSW store managers should be between range in age from their mid 20's to their early 30's and not someone with 10-15 years of past management experience.

66. During the December 13, 2007, meeting District Manager Soranno also told Plaintiff that she was not fashionable and that she did not fit the image of what Defendant was looking for in a Store Manager.

67. During December 2007, District Manager Soranno engaged in the conduct related and made the statements set forth, herein above, in paragraph nos. 20, 21, 23, 24, 25, 26, 28 and 29.

68. District Manager Soranno's statements and conduct as stated in paragraph nos. 20, 21, 23, 24, 25, 26, 28 and 29, stated Defendant's corporate policy regarding employees over the age of 40 and in the protected class pursuant to the ADEA.

69. In April 2008, District Manager Soranno violated Defendant's personnel policies and procedures by giving Plaintiff a *Below Expectations* Review although the personnel policies and procedures stated that an employee must have received a *Corrective Counseling/Warning* during the year and she had not received any *Corrective Counseling/Warning*.

70. District Manager Soranno also gave Plaintiff the *Below Expectations* Review although the *Warrensville Store's* sales statistics were consistent with the stores in his district.

71. Plaintiff was subjected to disparate treatment because of her age when District Manager Soranno gave her a *Below Expectations* Review in violation of Defendant's personnel policies and procedures.

72. Plaintiff was subjected to disparate treatment because of her age when District Manager Soranno gave her a *Below Expectations* Review because store managers in his district who were not in the protected class who did not receive a *Corrective Counseling/Warning* were not given a *Below Expectations* Review.

73. District Manager Soranno's conduct, herein above, violated Plaintiff's rights to be free from discrimination in employment because of her age in violation of the ADEA (29 U.S.C. 626 et seq. and R.C. § 4211.01 and § 4211.99 causing her to sustain compensatory damages for anxiety, humiliation, embarrassment, and emotional distress, in an amount not less than $500,000.00.

## COUNT TWO

### Retaliation Title VII and R.C. § 4112.01

74. Plaintiff incorporates by reference each and every allegation, averment and statement set forth, herein above, in paragraphs nos. one (1) through seventy-three (73), as if fully restated, herein below, and states further as follows.

75. On April 10, 2008, Plaintiff complained to Hill of Defendant's Human Resources Department about the *Below Expectations Review* given to her by District Manager Soranno and engaged in protected activity

11

by advising Hill of the conduct engaged in by Soranno and the statements made by him as set forth in paragraph nos. 20, 21, 23, 24, 25, 26, 28 and 29, herein above, and that she believed she had been subjected to discrimination because of her age, over 40.

76. On April 18, 2008, Plaintiff engaged in additional protected activity by advising Regional Manager Christensen, District Manager Soranno and Hill again of the conduct engaged in by Soranno and the statements made by him as set forth in paragraph nos. 20, 21, 23, 24, 25, 26, 28 and 29, herein above, and that she believed she had been subjected to discrimination because of her age, over 40.

77. Defendant refused to replace the *Below Expectations Review* with the *Meets Expectations* Review she received in August 2008, in her *Performance Profile* as promised by Regional Manager Christensen, in retaliation for Plaintiff having engaged in the protected activity of reporting the age discrimination she was subjected to by District Manager Soranno.

78. On March 10, 2009, District Manager Soranno issued a *Corrective Warning* to Harrah because she exited the back door/emergency door of the store to smoke a cigarette, in retaliation for Plaintiff having made a complaint against him for age discrimination because the *Corrective Warning* was issued in violation of Defendant's personnel policies and procedures because she had never received a counseling on the issue.

79. In April 2009 District Manager Soranno gave Harrah a *Meets Expectations* Review that he stated would have been an *Exceeds Expectations* Review if her stores fourth quarter sales statistics had not fallen below projections.

80. District Manager Soranno gave Plaintiff the *Meets Expectations* Review, in retaliation for her having made a complaint against him for age discrimination because Plaintiff's *Warrensville Store* was one (1) of only four (4) stores that actually exceeded Last Year sales in the Pittsburgh Region and company as a whole for the year 2008.

81. On August 20, 2009, District Manager Soranno issued a *Counseling Corrective* to Harrah for alleged cleanliness issues in the *Warrensville Store* and shrink control (theft of merchandise).

82. District Manager Soranno issued the *Counseling Corrective* to Harrah for alleged cleanliness issues in the *Warrensville Store* and shrink control (theft of merchandise), in retaliation for her having made a complaint against him for age discrimination because the *Warrensville Store* was not equipped with an adequate security system and although she had repeatedly requested help with the shrink control issue he (Soranno) had ignored her requests for help.

83. District Manager Soranno's conduct herein above violated Plaintiff right to be free from unlawful retaliation in the work place in violation of Title VII of the Civil Rights Act Of 1964, as amended, 42 U.S.C. §§ 2000e-5 and R. C. 4112. et seq.

84. District Manager Soranno's conduct herein knowingly and intentionally subjected Plaintiff to unlawful discrimination on the basis of her age and in retaliation for her having engaged in protected activity in violation of Title VII of the Civil Rights Act Of 1964, as amended, 42 U.S.C. §§ 2000e-5 and 42 U.S.C. § 1981 (a).

85. District Manager Soranno acted with malice and reckless indifference to Plaintiff's federally protected rights on the basis of age and for her having engaged in protected activity, in violation of Title VII of the Civil Rights Act Of 1964, as amended, 42 U.S.C. §§ 2000e-5 and 42 U.S.C. §§ 1981 (a) and (b).

86. As a result of District Manager Soranno's unlawful and discriminatory conduct base on Plaintiff's age and in retaliation for her having engaged in protected activity Plaintiff sustained compensatory damages for anxiety, humiliation, embarrassment, and emotional distress, in an amount not less than $500,000.00 under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e-5 and 42 U.S.C. §§ 1981 (a) and (b), and R.C. § 4112.99.

## COUNT THREE

### Age-ADEA-Disparate Treatment

87. Plaintiff incorporates by reference each and every allegation, averment and statement set forth, herein above, in paragraphs nos. one (1) through eighty-six (86), as if fully restated, herein below, and states further as follows.

88. District Manager Soranno's conduct as set forth, in Count Three, herein above, paragraph nos. 89, 90, 92 violated Plaintiff's right under the ADEA.

89. Plaintiff was subjected to disparate treatment because of her age because similarly situated store managers under the age 40, under District Manager Soranno's supervision, who were not in the protected class were not subjected to the same discipline as Plaintiff for the performance issues alleged.

90. District Manager Soranno's conduct, herein above, violated Plaintiff's rights to be free from discrimination in employment because of her age in violation of the ADEA (29 U.S.C. 626 et seq. and causing her to sustain compensatory damages for anxiety, humiliation, embarrassment, and emotional distress, in an amount not less than $500,000.00.

## COUNT FOUR

### Age-ADEA and R.C. § 4112.01 Disparate Treatment-Termination

91. Plaintiff incorporates by reference each and every allegation, averment and statement set forth, herein above, in paragraphs nos. one (1) through ninety (90), as if fully restated, herein below, and states further as follows.

92. On October 3, 2009, District Manager Harpe issued a *Counseling Corrective* to Harrah for alleged job performance related to the shrink control about which she had repeatedly requested help and had those requests ignored.

93. During the entire month of October 2009, through November 5, 2009, District Manager Harpe was in Harrah's *Warrensville Store* every week, (2) to four (4) days each week.

94. On November 5, 2009, District Manager Harpe issued a *Final Warning* to Harrah for alleged job performance issues that were not true and/or not directed.

95. On November 5, 2009, during the conversation regarding the *Final Warning* District Manager Harpe told Harrah that she would be terminated in thirty (30) days and wouldn't she just rather quit than be fired. Harrah told Harpe that she would not quit and District Manager Harpe stated that he would mirror her schedule and be in her store every day and stated further that she was pushing him.

96. After the conversation with District Manager Harpe regarding the *Final Warning* Harrah had an anxiety attack and chest pains and went directly to the emergency room (hospital). Harrah went on FMLA leave and did not return to work until February 2, 2011.

97. On November 20, 2009, although Harrah was paid by direct deposit to her checking account and had completed the required forms for FMLA and was on short term disability (salary continuance) she did not receive her pay.

98. Defendant's Benefits department representative told Harrah that she (Harrah) had missed a deadline for submitting the FMLA request and that she would have to wait until the next pay period. Harrah told the representative that she had not missed any deadline and that she would consult an attorney; Harrah received a call, a half hour later, from the representative stating that a check would be sent to her by overnight mail.

99. Harrah returned to work on February 2, 2010, after a meeting with District Manager Harpe. During the meeting Harpe told her that the *Warrensville Store* was in better shape than when she left.

100. Harrah returned to the *Warrensville Store* at 12:30 p.m. and saw that District Manager Harpe's representations that the store was in better shape were false.

101. Harrah learned that during the entire period she was on FMLA from November 5, 2009 until she returned, on February 2, 2010, Michelle Wyat ("Wyat"), who was less than 40 years of age and who was not in the protected class held the position of Store manager.

102. On February 2, 2010, upon her return to work Harrah learned that Wyat who was not in the protected class and who had not engaged in protected activity was not required to meet the same performance standards as had been expected of her, for example: (1) Harrah was required to hold weekly in person management meetings and Wyat was not; (2) Harrah was held accountable for cross-training the *Warrensville Store* staff and Wyat was not; (3) District Manager Harpe did not provide Harrah with the assistance of other store managers and associates from other stores to get freight out but provided the assistance to Wyat; and

15

Harrah was held responsible for diversifying the *Warrensville Store* staff and Wyat was not made responsible for diversifying the staff.

103. On February 23, 2010, District Manager Harpe terminated Harrah's employment for allegedly violating Defendant's *Loss Prevention* policy (No Apprehension) of not following customers suspected of theft out into the parking lot. Harrah did not violate the policy because she did not follow any customer suspected of theft out of the store.

104. Harrah did not violate Defendant's *Loss Prevention* policy (No Apprehension) by having a Sales Associate follow a customer suspected of theft out of the store because the customers suspected of theft remained in the store when the Sales Associate follow Defendant's accepted practice of sitting in a vehicle and trying to get a license plate.

105. Harrah told District Manager Harpe that Wyat had violated Defendant's *Loss Prevention* policy (No Apprehension) twice during her FMLA by actually running out of the store into the parking lot after customers suspected of theft; Harpe told Harrah that he was talking about her not Wyat.

106. Despite having actually having violated Defendant's *Loss Prevention* policy (No Apprehension) for which Harrah was terminated Wyat remains employed by Defendant and was promoted to Store Manager of the *Warrensville Store*.

107. Plaintiff was subjected to disparate treatment because of her age because of her age because similarly situated store managers under the age 40, under District Manager Harpe's supervision, who were not in the protected class were not subjected to the same discipline as Plaintiff for the performance issues alleged.

108. Plaintiff was subjected to disparate treatment because of her age because Wyat who was under the age 40, and under District Manager Harpe's supervision, was not terminated for engaging in the exact conduct and alleged violation of Defendant's *Loss Prevention* policy for which Plaintiff was terminated.

109. District Manager Harpe's conduct, herein above, violated Plaintiff's rights to be free from discrimination in employment because of her age in violation of the ADEA (29 U.S.C. 626 et seq. and R.C. § 4112.01 and R.C. § 4112.99 causing her to sustain compensatory damages for anxiety, humiliation, embarrassment, and emotional distress, in an amount not less than $1,000,000.00.

## COUNT FIVE

### Retaliation Title VII and R.C. § 4112.01

110. Plaintiff incorporates by reference each and every allegation, averment and statement set forth, herein above, in paragraphs nos. one (1) through one hundred and nine (109), as if fully restated, herein below, and states further as follows.

111. On February 23, 2010, District Manager Harpe terminated Harrah's employment in retaliation for her having engaged in protected activity regarding Defendant's employment practices related to age discrimination and not because of any violation of Defendant's *Loss Prevention* policy (No Apprehension).

112. District Manager Harpe's conduct herein above violated Plaintiff right to be free from unlawful retaliation in the work place in violation of Title VII of the Civil Rights Act Of 1964, as amended, 42 U.S.C. §§ 2000e-5 and R. C. 4112. et seq.

113. District Manager Harpe's conduct herein knowingly and intentionally subjected Plaintiff to unlawful discrimination on the basis of her age and in retaliation for her having engaged in protected activity in violation of Title VII of the Civil Rights Act Of 1964, as amended, 42 U.S.C. §§ 2000e-5 and 42 U.S.C. § 1981 (a).

114. District Manager Harpe acted with malice and reckless indifference to Plaintiff's federally protected rights on the basis of age and for her having engaged in protected activity, in violation of Title VII of the Civil Rights Act Of 1964, as amended, 42 U.S.C. §§ 2000e-5 and 42 U.S.C. §§ 1981 (a) and (b).

115. As a result of District Manager Harpe's unlawful and discriminatory conduct base on Plaintiff's age and in retaliation for her having engaged in protected activity Plaintiff sustained compensatory damages for anxiety, humiliation, embarrassment, and emotional distress, in an amount not less than $1,000,000.00 under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e-5 and 42 U.S.C. §§ 1981 (a) and (b), and R.C. § 4112.99.

**WHEREFORE, Plaintiff, Marsha M. Harrah**, prays that this Court enter judgment on her Complaint, in her favor and against *Defendant DSW, Inc.*, as follows:

1. On Counts One, Two, and Three, Plaintiff demands back-pay and front-pay, and the value of lost medical and other employment related benefits, and compensatory damages for anxiety, humiliation, embarrassment, and emotional distress, and current and future medical expenses in an amount not less $500,000.00, on each Count, including the reinstatement of Plaintiff's employment;

2. On Counts Four and Five, Plaintiff demands back-pay and front-pay, and the value of lost medical and other employment related benefits, and compensatory damages for anxiety, humiliation, embarrassment, and emotional distress, and current and future medical expenses in an amount not less $1,000,000.00, on each Count, including the reinstatement of Plaintiff's employment;

3. Attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

4. Any and all other relief that this Honorable Court determines is appropriate and just.

Respectfully submitted,

/s/Robert Smith, III
Robert Smith, III (0025381)
75 Public Square, Suite 1111
Cleveland, Ohio 44113
(216) 502.0800/fax (216)502.7777
E-mail: rsiiiattyatlaw@aol.com

Attorney for Plaintiff Marsha M. Harrah

## JURY DEMAND

Plaintiff hereby demands a trial by jury, pursuant to Fed. R. Civ. P. 38 (b).

/s/Robert Smith, III
Attorney for Plaintiff