IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| MARSHA M. HARRAH | ) |
|       Plaintiff, | ) CASE NO. 1:11CV00866 |
| vs. | ) JUDGE DONALD C. NUGENT |
| DSW INC. | ) **MEMORANDUM OPINION** |
|       Defendant. | ) **AND ORDER** |

Defendant DSW, Inc. ("DSW") moves for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) as to Plaintiff Marsha Harrah's entire First Amended Complaint. DSW asserts that judgment on the pleadings is warranted because Plaintiff failed to schedule her age discrimination and retaliation claims against DSW in her Chapter 13 bankruptcy proceeding, and therefore is judicially estopped from pursuing these claims.[1]

For the reasons explained herein, DSW's Motion for Judgment on the Pleadings (ECF #97) is GRANTED. Judicial estoppel bars the claims in Ms. Harrah's First Amended Complaint. This Order does not reach the issue of whether Ms. Harrah's bankruptcy trustee representing the estate as the real party in interest may pursue these same claims.

## I. FACTS

Ms. Harrah, a former Store Manager for DSW, alleges that DSW discriminated against

---

[1] DSW also requests judgment on the pleadings because Ms. Harrah violated Federal Rule of Civil Procedure 4(m) when she failed to serve DSW within 120 days after filing her initial Complaint. The Court need not reach this ground for judgment on the pleadings because judicial estoppel applies to bar Ms. Harrah's claims against DSW.

1

her based on her age and also retaliated against her. Ms. Harrah contends in her First Amended Complaint that the discrimination began in December 2007. (Pl. Am. Compl. ¶¶ 20-25 (ECF #3).) On April 10, 2008, Ms. Harrah informed DSW's Human Resources Department "that she believed [her District Manager's statements] constituted age discrimination regarding her employment." (*Id.* at ¶ 35.) Ms. Harrah asserts that the discrimination continued until her termination on February 23, 2010. (*Id.* at ¶¶ 20-66.)

On October 2, 2009, Ms. Harrah filed a Chapter 13 Voluntary Bankruptcy Petition in the United States Bankruptcy Court for the Northern District of Ohio (Cleveland), Case No. 09-19310. On that date, Ms. Harrah filed with her petition a sworn Summary of Schedules which listed her financial assets and liabilities.

In her bankruptcy case, Ms. Harrah did not list any legal claims against DSW as assets on her sworn Summary of Schedules, Schedule B – Personal Property. Based on this and Ms. Harrah's other sworn filings, the Bankruptcy Court issued an Order Confirming Plaintiff's Chapter 13 Plan on January 20, 2010. Ms. Harrah has not received a discharge in the bankruptcy case.

On March 16, 2010, Ms. Harrah filed a Charge of Discrimination with the EEOC alleging age discrimination and retaliation by DSW. On or about January 31, 2011, Ms. Harrah received from the EEOC a Dismissal and Notice of Rights, or "right-to-sue" letter. Ninety days later, on May 1, 2011, Ms. Harrah filed a Complaint against DSW in this Court. She filed her First Amended Complaint on September 6, 2011, alleging age discrimination and retaliation by DSW.

Even though Ms. Harrah filed her Chapter 13 bankruptcy petition in 2009, she failed to amend Schedule B to list claims against DSW as assets until January 11, 2012 – after DSW filed

the instant Motion for Judgment on the Pleadings. Even then, the First Amended Schedule B did not reflect the purported dollar value of Ms. Harrah's claims. It was not until January 31, 2012 that Ms. Harrah filed a Second Amended Schedule B to reflect the purported dollar value of her age discrimination and retaliation claims against DSW. Ms. Harrah's Second Amended Schedule B values her claims against DSW at $485,331.00.[2]

## II. STANDARD OF REVIEW

A Rule 12(c) motion for judgment on the pleadings is reviewed under the same standard as a motion to dismiss under Rule 12(b)(6). *Ferron v. Zoomego, Inc.*, 276 F. Appx. 473, 475 (6th Cir. 2008). In considering a motion for judgment on the pleadings, the Court must assess, given the material required to be in the complaint, whether the complainant can prove a set of facts entitling her to recovery on the allegations against the moving party. *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955 (2007). In making this assessment, the Court must take only well-pleaded factual allegations as true and reject allegations that are nothing more than "a formulaic recitation of the elements of a cause of action." *Twombly*, 127 S.Ct. at 1964-65; *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1953 (2009). The motion may be granted "when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008).

## III. DISCUSSION

DSW claims that the doctrine of judicial estoppel bars Ms. Harrah's claims because she failed to schedule her claims against DSW as assets in her Chapter 13 bankruptcy prior to DSW's

---

[2] In Ms. Harrah's Second Amended Schedule C filed in the bankruptcy case, she represents that a portion of her $485,331.00 claim is exempt under Ohio Revised Code § 2328.66(A)(12)(d) and (A)(18), and therefore would not be payable to her creditors.

Motion for Judgment on the Pleadings. Ms. Harrah counters that judicial estoppel should not apply because she has now scheduled her claims (albeit after the Motion for Judgment on the Pleadings), and put the bankruptcy court, the trustee, and her creditors on notice of the claims.

There is no dispute that Ms. Harrah was required to schedule all assets. The Bankruptcy Code requires debtors to file a schedule of assets and liabilities, a schedule of current income and expenditures, and a statement of the debtor's financial affairs. 11 U.S.C. § 521(a)(1). In fact, "the disclosure obligations of consumer debtors are at the very core of the bankruptcy process and meeting these obligations is part of the price debtors pay for receiving the bankruptcy discharge." *Lewis v. Wyerhaeuser Co.*, 141 Fd Appx. 420, 424 (6th Cir. 2005). "[V]iewed against the backdrop of the bankruptcy system and the ends it seeks to achieve, the importance of this disclosure duty cannot be overemphasized." *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414 (3rd Cir. 1988).

Likewise, the parties agree that a cause of action is an asset be disclosed under Section 521(1). *Eubanks v. CBSK Financial Group, Inc.*, 385 F.3d 894, 897 (6th Cir. 2004). Moreover, the "debtor is required to disclose all potential causes of action." *Lewis*, 141 Fed. Appx. at 424. The duty to disclose a potential claim as an asset in bankruptcy arises when the wrongful conduct giving rise to the claim is suffered, as opposed to when an actual complaint is filed. *See Wallace v. Johnston Coca-Cola Bottling Group, Inc.*, 2007 U.S. Dist. LEXIS 21170, at *9 (S.D. Ohio March 26, 2007). The debtor's disclosure obligation is "a continuing one that does not end once the forms are submitted to the bankruptcy court." *Dickerson v. Federal Express Corp.*, 2010 U.S. Dist. LEXIS 22742, at *7 (W.D. Tenn. March 10, 2010) (internal citations omitted). Therefore, "a debtor must amend his financial statements if circumstances change." *Id.*

4

The obligation to amend is particularly important in the context of a Chapter 13 bankruptcy, such as the one at issue here, because the bankruptcy estate includes property that the "debtor acquires after the commencement of the case but before the case is closed . . . ." 11 U.S.C. § 1360(a)(1). Accordingly, the debtor's obligation to disclose potential causes of action continues after the Chapter 13 plan is confirmed. *See Dickerson*, 2010 U.S. Dist. LEXIS 22742, at *7 (debtor obligated to amend schedule of assets to disclose employment claims which arose four (4) years after Chapter 13 plan was confirmed); *Ajaka v. BrooksAmerica Mortg. Corp.*, 453 F.3d 1339, 1344 (11th Cir. 2006) (debtor had duty to amend schedule of assets to disclose complaint filed after Chapter 13 plan was confirmed).

Ms. Harrah failed to comply with her duty to disclose her potential age discrimination and retaliation claims against DSW in her Chapter 13 bankruptcy filings until January of 2012 – even though Ms. Harrah first believed herself to be the victim of age discrimination in 2007, and complained to her supervisors about the alleged discrimination in 2008. Although Plaintiff filed her bankruptcy case in 2009, she did not schedule her potential age discrimination and retaliation claims until 2012, and then did so only in response to DSW's Motion for Judgment on the Pleadings.

DSW contends in the Motion for Judgment on the Pleadings that judicial estoppel should be applied under these circumstances, where Plaintiff failed to schedule her discrimination and retaliation claims in the bankruptcy case until DSW brought the omission to light. Judicial estoppel precludes a party from adopting a position that is inconsistent with a stance taken in a prior case. The purpose of the doctrine is to prevent a party from playing fast and loose with the courts, and to protect the essential integrity of the judicial process. *Lowrey v. Stovall*, 92 F.3d

219, 223 (4th Cir. 1996) (citing *John S. Clark Co. v. Faggert & Frieden, P.C.*, 65 F.3d 26, 28-29 (4th Cir.1995) (citations and quotation marks omitted)).[3] The Sixth Circuit has recognized judicial estoppel as an equitable doctrine that "is utilized in order to preserve 'the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship.'" *Browning v. Levy*, 283 F.3d 761, 776 (6th Cir. 2002) (quoting *Teledyne Indus., Inc. v. NLRB*, 911 F.2d 1214, 1218 (6th Cir. 1990)). Judicial estoppel, however, should be "applied with caution to avoid impinging on the truth-seeking function of the court, because the doctrine precludes a contradictory position without examining the truth of either statement." *Eubanks*, 285 F.3d at 897 (internal quotations omitted).

To support a finding of judicial estoppel in the bankruptcy context, a court must find three things:

(1) the debtor assumed a position that was contrary to the one that she asserted under oath in the bankruptcy proceedings;

(2) the bankruptcy court adopted the contrary position either as a preliminary matter or as part of a final disposition; and

(3) the debtor's omission did not result from mistake or inadvertence.

*White v. Wyndham Vacation Ownership, Inc.*, 617 F.3d 472, 478 (6th Cir. 2010). Each of the factors required for judicial estoppel is present here.

First, Ms. Harrah assumed a position before this Court contrary to the one she asserted under oath in the bankruptcy proceedings. Ms. Harrah omitted from her initial bankruptcy filings

---

[3] Judicial estoppel may apply in cases where neither collateral estoppel nor equitable estoppel would apply. *Lowrey*, 92 F.3d at 223 (citing *Allen v. Zurich Ins. Co.*, 667 F.2d 1162, 1166 (4th Cir.1982)).

– which she swore were accurate under the penalty of perjury – any mention of her discrimination and retaliation claims. For almost three years she failed to comply with her continuing duty of disclosure, despite the Bankruptcy Code's specific requirements that she schedule her discrimination and retaliation claims. *See* 11 U.S.C. §§ 521(a)(1), 541(a)(7) (describing the debtor's affirmative duty to disclose all of her assets to the bankruptcy court). This omission, which essentially asserted that the discrimination and retaliation claims did not exist, is irreconcilable with the allegations contained in the First Amended Complaint Ms. Harrah filed before this Court. *See White*, 617 F.3d at 479 (this omission also conflicts the request and receipt of a right-to-sue letter).

Second, the bankruptcy court accepted Ms. Harrah's prior inconsistent position that she did not posses any potential legal claims. On January 20, 2010, the bankruptcy court entered an order confirming Ms. Harrah's bankruptcy plan and, among other things, directed her to make payments to the trustee. In so doing, the bankruptcy court adopted Ms. Harrah's position. The Sixth Circuit has explained, "[W]hen a bankruptcy court – which must protect the interests of all creditors – approves a payment from the bankruptcy estate on the basis of a party's assertion of a given position, that, in our view, is sufficient 'judicial acceptance' to estop the party from later advancing an inconsistent position." *Lewis*, 141 Fed. Appx. at 425.

Third, Ms. Harrah's failure to schedule her employment claims was not "inadvertent" as that term is defined in relation to a Chapter 13 debtor's failure to disclose. In *White*, its most recent judicial estoppel decision, the Sixth Circuit explained that, in determining whether a plaintiff's conduct resulted from mistake or inadvertence, the Court considers whether: (1) she lacked knowledge of the factual basis of the undisclosed claims; (2) she had a motive for

7

concealment; and (3) the evidence indicates an absence of bad faith.

Ms. Harrah cannot claim to have been ignorant of the factual basis of her undisclosed claims. Her First Amended Complaint is unequivocal that she had knowledge of the factual basis as of April 10, 2008, the date on which she complained to DSW about "age discrimination regarding her employment." (Pl. Am. Compl. ¶ 15 (ECF #3).)

Further, motive to conceal assets is always present in a Chapter 13 case, because it is "always in a Chapter 13 petitioner's interest to minimize income and assets." *Lewis*, 141 Fed. Appx. at 426; *White*, 617 F.3d at 479. If the employment claims become part of the debtor's bankruptcy estate, then any proceeds realized from the claims could go towards paying the plaintiff's creditors, rather than simply going to the plaintiff. *White*, 617 F.3d at 479.

Motive to conceal likewise can be inferred from Ms. Harrah's continuing failure to amend her Schedule B or Statement of Financial Affairs to inform the bankruptcy court of her claims against DSW following her: (1) filing the charge with the EEOC; (2) receipt of the right-to-sue letter; and (3) filing of this lawsuit. Indeed, Ms. Harrah allowed the bankruptcy trustee to operate with incomplete information for more than two years after the duty to disclose arose, and for more than seven months after filing this lawsuit.

*White* holds that, after both "knowledge" of the claims and "motive" to conceal claims are established in the analysis of whether the failure to disclose was "inadvertent", it is the debtor-plaintiff's burden to set forth evidence establishing the lack of "bad faith." *Id.* In determining whether Ms. Harrah's actions show an "absence of bad faith," the Court is to focus on her efforts to correct her bankruptcy schedules and to appraise the bankruptcy court of the undisclosed claims. *Id.* at 480. "[S]ince judicial estoppel seeks to prevent parties from abusing the judicial

8

process through cynical gamesmanship," the timing of correction efforts is "significant," with affirmative efforts that pre-date a "judicial estoppel" motion from the defendant being "more important" than efforts generated in response to a dispositive motion. *Id.* Indeed, in *White*, the court ultimately concluded that it would not "consider favorably" such reactionary efforts. To do so would encourage gamesmanship and jeopardize the integrity of the judicial process, for allowing a plaintiff to amend sworn bankruptcy filings after an omission is raised by an adversary encourages debtors to disclose their assets only if they are caught concealing them.

Accordingly, the Sixth Circuit applied judicial estoppel in *White*, where the debtor-plaintiff did not amend her schedules except in reaction to a dispositive motion based on judicial estoppel. Even though the plaintiff in *White* took some limited steps to inform the bankruptcy court of claims against her employer before the defendants filed a dispositive motion, her efforts were insufficient to demonstrate the absence of bad faith.

Ms. Harrah made even less effort to enlighten the bankruptcy court concerning her employment claims than the plaintiff in *White*. Most significantly, Ms. Harrah made no effort to inform the bankruptcy court of her claims against DSW prior to DSW's Motion for Judgment on the Pleadings. Ms. Harrah did not inform the bankruptcy court of her employment claims except in reaction to DSW's judicial estoppel argument. Unequivocally, Ms. Harrah's ex poste facto efforts are inadequate under *White* to indicate the absence of bad faith.

Ms. Harrah's arguments in opposition to judicial estoppel are untenable. To begin, Ms. Harrah's reliance on *Eubanks* to argue that her remedial efforts establish the absence of bad faith is misplaced. In *Eubanks*, the debtor-plaintiffs made numerous, effective attempts to correct the initial omission both before and after a motion to dismiss was filed. As a result, the court

declined to apply judicial estoppel. *Eubanks* is distinguishable from the situation here, where Ms. Harrah took no steps to inform the bankruptcy court of her claims against DSW except in reaction to the Motion for Judgment on the Pleadings. Even then, Ms. Harrah's first amendment to her disclosures failed to appraise the bankruptcy court of the anticipted monetary value of her employment claims. Ms. Harrah did not provide a dollar amount for her claims until she amended her disclosures for a second time on January 31, 2012. The Sixth Circuit has clearly established that, in contrast to the extensive and self-initiated disclosures made by the plaintiffs in *Eubanks*, a plaintiff's cursory disclosures in response to a motion to dismiss do not show the absence of bad faith or that the omission resulted from mistake or inadvertence. *White*, 617 F.3d at 483 (distinguishing *Eubanks*); *Lewis*, 141 Fed Appx. at 427. Where, as here, a plaintiff fails to take sufficient "affirmative steps to fully inform the trustee and the bankruptcy court of the action," the application of judicial estoppel is proper. *Lewis*, 141 Fed. Appx. at 426.

Moreover, the fact that Ms. Harrah's lawsuit was not filed until May 1, 2011, nearly nineteen months after her Chapter 13 case, does not negate Ms. Harrah's knowledge of her claims. For purposes of judicial estoppel, a claim accrues "at the time that the wrongful conduct giving rise to it is suffered." *Wallace v. Johnston Coca-Cola Bottling Group, Inc.*, 2007 U.S. Dist. LEXIS 21170, at *9-10 (S.D. Ohio Mar. 23, 2007). Furthermore, Ms. Harrah's insinuation that she lacked knowledge of her claims is belied by the fact that she filed her discrimination charge with the EEOC less than two months after the approval of her bankruptcy plan. *Lewis*, 141 F. Appx. at 428 (citing filing of administrative charge one month after bankruptcy plan was approved as evidence of bad faith).

Ms. Harrah also fails to excuse her omission of her claims against DSW from her

bankruptcy schedules by arguing that, at the time she filed for bankruptcy, she: (1) was focused on preserving her home and not with her ongoing employment issues with DSW; (2) did not "appreciate" or "understand" that the claims against DSW were assets which required disclosure; and (3) had never filed a lawsuit before. It does not appear that any court has accepted ignorance of the law as an excuse for a party's failure to comply with the requirement of full disclosure. *See, e.g., Wallace*, 2007 U.S. Dist. LEXIS 21170, at *6 (a plaintiff's "protestations of good faith" in an affidavit are unfounded when they rely on legal ignorance or mistake). Indeed, such ignorance is unreasonable where Ms. Harrah was represented by an attorney in the bankruptcy, and any question about the required disclosures could have been answered by her attorney. To the extent Ms. Harrah disclosed her claims against DSW to her bankruptcy attorney, she is bound by any error of her attorney in not including the claims in Ms. Harrah's bankruptcy schedules. *Lewis*, 141 Fed. Appx. at 427 (applying judicial estoppel despite a plaintiff's claim of good faith reliance on her attorney's paralegal); *Barger v. City of Cartersville, Georgia*, 348 F.3d 1289, 1295 (11th Cir. 2003) (although the debtor's attorney failed to list the debtor's discrimination suit on the schedule of assets despite the fact that the debtor specifically told him about the suit, the attorney's omission was no panacea).

Further, Ms. Harrah's argument that DSW suffers no prejudice if she is allowed to bring her suit is irrelevant. The focus of judicial estoppel is on preserving the court's integrity. Thus, the Sixth Circuit does not require the party invoking the doctrine to demonstrate privity, reliance, or personal prejudice. *See White*, 617 F.3d 472.

While Sixth Circuit precedent requires the application of judicial estoppel under the circumstances present here, there is no question that judicial estoppel is a harsh remedy with

11

potential undesirable consequences. Indeed, judicial estoppel permits an alleged tortfeasor who is unharmed by any lack of disclosure in the bankruptcy court to walk away without defending the civil charges alleged against it. Here, assuming hypothetically that DSW did engage in age discrimination or retaliation, Ms. Harrah (hypothetically) suffered real harm that will not be redressed, and DSW will not be made to face the consequences of its (hypothetical) illegal actions. Judicial estoppel must be viewed, however, in light of the paramount importance of disclosure in bankruptcy, and the desire to protect the integrity of the courts, not individual litigants. *See Teledyne*, 911 F.2d at 1219-20. Thus, judicial estoppel is appropriate in this case despite the individual rights or interests at stake.

Another potential adverse consequence of judicial estoppel might be that a plaintiff's creditors in bankruptcy are denied the possibility of any recovery in the civil action becoming part of the bankruptcy estate. Perhaps the answer to this dilemma is that the application of judicial estoppel against the debtor-plaintiff is not necessarily a bar to the trustee in bankruptcy pursuing the claims. Although the Sixth Circuit has not reached this issue, other circuit courts have concluded that, even if judicial estoppel would have barred the plaintiff from asserting her claims, the question is essentially moot because the plaintiff had no standing to pursue the claims in the first instance. Rather, the claims should have been asserted by the bankruptcy estate through the trustee, which is the "real party in interest." *See Piper v. Dollar General Corp.*, 2011 WL 4565432, at *6 (M.D. Tenn. Sept. 29, 2011); Fed R. Civ. P. 17(a) ("an action must be prosecuted in the name of the real party in interest"); 11 U.S.C. § 541(a)(1) (the debtor's assets (such as claims) become part of the bankruptcy estate once the bankruptcy petition is filed). Moreover, because the trustee is innocent of the misconduct that barred the plaintiff's claims, and

because allowing the trustee to pursue the claims would not necessarily thwart (and might promote) the goal of disclosure in bankruptcy, there is no equitable basis to judicially estop the trustee. *See Reed v. City of Arlington*, 2011 WL 3506100, at *2 (5th Cir. Aug. 11, 2011) (en banc) (an innocent trustee can pursue for the benefit of creditors a judgment or cause of action that the debtor fails to disclose in bankruptcy); *Biesek v. Soo Line R.R. Co.*, 440 F.3d 410, 413 (7th Cir. 2006) (judicial estoppel assumes that the tort case belongs to the debtor, when the trustee is the real party in interest). Indeed, the court noted in *Piper*, equity may favor "allowing the trustee to pursue these claims as it increases the potential that the plaintiff's creditors will get paid and ensures that, to the extent the defendant is liable for misconduct, the defendant is sanctioned." *Piper*, 2011 WL 4565432, at *6 (citing *Eastman v. Union Packific R.r. Co.*, 493 F.3d 1151, 155 n. 3 (10th Cir. 2007)).

The issue under consideration here, however, is whether Ms. Harrah is judicially estopped from asserting her claims in this case. For all of the reasons discussed, judicial estoppel applies. The Court does not reach the issue of whether the bankruptcy trustee, representing the estate as the real party in interest, may pursue the same claims.

## IV. CONCLUSION

DSW's Motion for Judgment on the Pleadings is GRANTED for all of the reasons stated herein.

IT IS SO ORDERED.

*/s/ Donald C. Nugent*
DONALD C. NUGENT
UNITED STATES DISTRICT JUDGE

DATED: *February 9, 2012*

13